*814 OPINION OF THE COURT
MORGAN, Judge:
Convicted contrary to his plea of the forcible sodomy of an Air Force staff sergeant (SSgt) while on temporary duty (TDY) to Tegucigalpa, Republic of Honduras, appellant assigns two errors. First, he claims he was prejudiced by the failure of the military judge to reopen the Article 32, UCMJ, (10 U.S.C. § 832) pretrial investigation. Second, he claims the case against him is factually and legally insufficient to sustain the finding of guilt. We believe otherwise and affirm.
FACTS
While on deployment to the Republic of Honduras, the victim, SSgt H, along with SSgt Candelario, a few friends, and appellant went to dinner and bar-hopping in Tegucigalpa. They returned late, around midnight of October 29, 1993. SSgt H stayed up drinking and conversing with appellant on the patio outside the victim’s room, which he shared with SSgt Candelario and SSgt Bur-well, until around 0230 hours. At that point SSgt H, who was intoxicated, excused himself and retired. Appellant told SSgt H, that, rather than return to his own room located in an apartment approximately 100 yards away, he would stay and sleep on the hammock on the patio. SSgt Candelario had gone to bed approximately a half-hour earlier. Sometime between approximately 0230 to 0300 hours, SSgt H awakened to discover a man on his hands and knees, fellating him. He testified that he arose shouting and took a swing at the man, whom he recognized to be appellant. At this point, SSgt Candelario, awakened by the commotion, saw a man he believed to be appellant scuttling out of the room on his hands and knees. SSgt Burwell, who had fallen asleep on the couch just outside SSgt H’s doorway, was also aroused by SSgt H’s cries, and spotted a fleeing figure whom he identified to be appellant. SSgt H and SSgt Candelario subsequently reported this to Captain (Capt) Elmore, who had a room in the same building, known as the Figueroa House.
At trial, appellant hotly contested his identification, pointing out that it was dark in SSgt H’s room, that SSgt H wore glasses, that SSgt Burwell’s and SSgt Candelario’s identifications were uncertain at best, and were the product of suggestion and mutual affirmation among the three eyewitnesses. Nevertheless, after considerable deliberation, the military judge returned a finding of guilty.
THE ARTICLE 32 INVESTIGATION
The Article 32 investigation and the trial were held at Eglin Air Force Base (AFB), Florida. By the time of the investigation, the principals had returned to their permanent duty stations, all of which were well over 100 miles away from Eglin AFB. SSgt H, SSgt Candelario, and SSgt Burwell had all given written, sworn statements to the Army Criminal Investigation Division (CID) agent while they were still in Honduras. Appellant nevertheless requested the Investigating Officer (IO) arrange the presence of SSgt H, Capt Elmore, SSgt Candelario, and SSgt Burwell. Determining that they were “unavailable” under Rule for Courts-Martial (R.C.M.) 405(g), the IO instead elicited sworn, telephonic testimony from all four, using a speaker phone. Appellant’s counsel was permitted to, and did, cross-examine each. Subsequently, the IO summarized the testimony and reduced it to writing. The net effect, therefore, of the IO’s ruling was to deny the appellant no more than the opportunity to observe the demeanor of the witnesses. There is no indication that appellant requested that the witnesses’ telephonic testimony be recorded or transcribed.
We begin by noting that the Investigating Officer must be afforded some latitude in deciding upon the availability of any requested witness, both by the military judge who may be called upon to review such a decision, and, ultimately, by this Court as well. In general, we will not disturb a ruling by the Investigating Officer unless it is arbitrary, capricious, or a clear abuse of discretion. See, e.g., United States v. Roberts, 10 M.J. 308, 310 (C.M.A.1981) (IO did not abuse discretion declaring witness unavailable); United States v. Svoboda, 12 M.J. 866, 867 (A.F.C.M.R.1982), pet. denied, 13 M.J. 243 (C.M.A.1982) (no abuse of discretion in not *815 tape recording testimony); United States v. Rowe, 8 M.J. 542, 544 (A.F.C.M.R.1979) (same), rev’d on other grounds, 11 M.J. 11 (C.M.A.1981); United States v. Clements, 12 M.J. 842, 844 (A.C.M.R.1982) (military judge did not abuse his discretion finding IO’s determination that a witness was unavailable was neither unreasonable nor arbitrary), pet. denied, 13 M.J. 232 (C.M.A.1982); United States v. Jackson, 33 C.M.R. 884, 889, 1963 WL 4964 (A.F.B.R.1963) (10 did not abuse discretion refusing to order production of agent’s interview notes).
In making his initial determination, the 10 relied upon R.C.M. 405(g)(1)(A), which declares a witness is reasonably available “when the witness is located within 100 miles of the situs of the investigation and the significance of the testimony outweighs the difficulty, expense, delay, and effect on military operation of obtaining the witness’ appearance.” Noting that all of the requested witnesses were outside the 100 mile radius, the 10 declared them unavailable and considered instead their previous sworn statements given to the CID agent and their sworn telephonic testimony, subject to cross-examination, which he took himself.
The difficulty here is the IO’s erroneous belief, that R.C.M. 405(g)(1)(A) was preclusive of availability if the witness were located more than 100 miles from the site of the investigation, led to an abdication of his role. In effect, he exercised no discretion at all, at least insofar as his determination of unavailability was concerned. Facially, at least, this brings this case squarely within the coverage of our decision in United States v. Marrie, 39 M.J. 993 (A.F.C.M.R.1994), aff'd, 43 M.J. 35 (1995), even though that decision issued subsequent to the IO’s determination and the military judge’s ruling.
In Marrie we held that R.C.M. 405(g)(1)(A) did not establish a per se rule of unavailability. There, as here, the 10 deemed the Rule conclusive on the question of witness availability where the requested witness was outside the 100-mile radius. Lacking any articulated reasons for a witness denial, we were left without any basis for applying an abuse of discretion test, and assumed error.
But there the similarity ends. The 10 in this case arranged for telephonic questioning, under oath, of all of the denied witnesses, with the full participation of appellant and his counsel. The 10 then wrote summaries of their testimony, which were subsequently adopted by the witnesses. Unlike Marrie, where the military judge echoed the IO’s error, the military judge in this case expressly decided not to rely on R.C.M. 405(g)(1)(A) in denying a defense request to reopen the Article 32 investigation. He also provided appellant’s counsel the opportunity to further interview the witnesses before trial — an opportunity counsel declined, saying he was satisfied that he had adequately interviewed the witnesses.
Marrie should not be overread to stand for the proposition that a ruling of unavailability is always fatally infirm if it is premised on the 100 mile rule. As we said there, the 100 mile “rule” did no more than to establish when a witness was available and did not establish a per se rule of unavailability. Likewise, a ruling that a witness was unavailable based exclusively on geographical location does not autonomously invalidate an otherwise sufficient investigation. The failure must also occasion undue prejudice on the accused.
In this case, appellant’s argument fails for a number of reasons. First, even though the 10 did found his unavailability ruling on nothing more than the 100-mile rule, the military judge did not. He instead weighed the difficulty of securing the witnesses against the importance of their personal appearance to the integrity of the investigation and the corresponding prejudice to the appellant if they did not. In this latter regard, the military judge determined the telephonic testimony to be a reasonable substitute for a personal appearance.*
*816 Under the circumstances, we can perceive virtually no prejudice to the appellant. There is, of course, no absolute right to personal confrontation at an Article 32 investigation, yet in this case appellant got everything but. By the time of trial the defense counsel had on hand two signed, sworn statements for each of the eyewitnesses and the victim, statements which on occasion supplied large-bore ammunition for cross-examination. Accordingly, the military judge did not abuse his discretion in refusing appellant’s motion to re-open the Article 32 investigation. Roberts, 10 M.J. at 310.
FACTUAL AND LEGAL SUFFICIENCY
We have absolutely no difficulty in deciding that the evidence, considered in the light most favorable to the prosecution, is legally sufficient to sustain a conviction beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). There were three eyewitnesses who identified appellant; one of them the victim. All three of them lived in the relatively close-knit community of Americans working in Honduras, and were familiar with appellant’s appearance. SSgt H and SSgt Candelario had been with appellant the entire evening, and knew what he was wearing, as well. There was evidence that access to the Figueroa House was controlled by a guard, and that no non-resident other than the appellant was admitted to the house during the relevant time frame. All of the witnesses agreed that there was nobody living in Figueroa House who had the apparently distinctive physical characteristics of appellant. Similarly, the events transpired within, at most, a half-hour after the appellant informed the victim that he would retire in a hammock, located only steps away from the entrance to SSgt H’s room.
For the same reasons we are personally persuaded of appellant’s guilt. United States v. Turner, 25 M.J. 324 (C.M.A.1987). To be sure, there were inconsistencies among the eyewitnesses, but they were comparatively insubstantial, readily attributable to honest differences in perception, faulty memory, and even intoxication. In fact, those very inconsistencies tended to diminish the credibility of the (apparently motiveless) conspiracy to frame appellant postulated by appellant at trial.
Even though defense counsel skillfully elicited facts tending to obscure a proper identification, including SSgt H’s near-sightedness, the poor lighting, and the fleeting opportunity for identification afforded SSgt Candelario and SSgt Burwell, he was unable to shake the victim’s positive identification. Given the physical circumstances of the offense, and the absence of even a plausible motive to fabricate or frame the appellant, SSgt H’s testimony is compelling.
The findings of guilt are correct in law and in fact, the sentence is appropriate, and the same are hereby
AFFIRMED.
Senior Judges PEARSON and SCHREIER concur.

 Our holding should not be misconstrued as an indorsement of the decision not to require the presence of the victim. The importance of the victim's testimony to a pretrial investigation is considerable, and a decision that a victim is unavailable should be carefully considered, clearly articulated, and amply supported on the record.