Colonel Nicholas G. MORGAN III, Petitioner,

v.

Colonel J. Jeremiah MAHONEY, Chief Military Judge, Respondent.

Misc. Dkt. No. 99–03.

U.S. Air Force Court of Criminal Appeals.

15 March 1999.

Before YOUNG, Senior Judge, SPISAK, and SCHLEGEL, Appellate Military Judges.

OPINION OF THE COURT

YOUNG, Senior Judge:

Petitioner was a reserve officer assigned to Air Combat Command Security Forces at Langley Air Force Base (AFB), Virginia. Effective 1 February 1998, he was transferred to the retired reserve. By order of the Secretary of the Air Force, dated 15 July 1998, the petitioner was ordered to report on active duty to Langley AFB at 0800, 27 July 1998, for trial by court-martial. On 26 October 1998, the general court-martial convening authority referred to trial by general court-martial six specifications against the accused, all concerning his completion of documents relating to the performance of his reserve duties between 1 January 1995 and 31 August 1996. Five specifications allege the petitioner signed false official records with the intent to deceive. Article 107, 10 U.S.C. § 907. The sixth specification alleges that the petitioner's use of a forged signature on an official document amounted to conduct unbecoming an officer. Article 133, UCMJ, 10 U.S.C. § 933. Prior to arraignment, the petitioner moved to dismiss all charges and specifications, claiming the court-martial

lacked *in personam* jurisdiction. The military judge denied petitioner's motion. The petitioner filed a petition seeking an extraordinary writ ordering the military judge to dismiss all charges and specifications. After reviewing the petitioner's submissions, including the military judge's findings and ruling, we decided not to issue a show cause order to the government.

### I. Jurisdiction of the Court

■ Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the authority to issue extraordinary writs in aid of our jurisdiction. *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979). We will issue such a writ only in extraordinary circumstances when the petitioner has established his entitlement to relief. *United States v. Labella,* 15 M.J. 228, 229 (C.M.A.1983).

■ The petitioner seeks a writ of mandamus which is an order used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). It is a drastic remedy to be used sparingly. *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). To justify reversal of a discretionary decision by mandamus, we must be satisfied that the military judge's decision amounted "to a judicial usurpation of power or be characteristic of an erroneous practice which is likely to recur." *Murray v. Haldeman,* 16 M.J. 74, 76 (C.M.A.1983) (citations omitted).

■ In *Murray,* the Court of Military Appeals recognized three instances when consideration of the merits of the petition would be appropriate: (1) where the petitioner develops substantial arguments denying the right of the military to try him; (2) where prompt review will conserve time, energy, cost and the ordeal of a trial; and (3) where the issues to be resolved are recurrent and will inevitably be faced by appellate courts in many future cases. *Id.* at 76–77.

We conclude that this is an appropriate case to entertain the petitioner's arguments. While this issue may not arise in many future cases, it is one of first impression and involves the military's right to try the petitioner. In addition, we believe it is appropriate to signal the military judge that additional findings of fact may be necessary to resolve the jurisdiction issue should this case reach us on appeal.

### II. Jurisdiction Over the Person

■ Prior to enactment of the UCMJ, there was considerable debate about jurisdiction over reservists. *See Willenbring v. Neurauter,* 48 M.J. 152, 160–64 (1998).

> In reaction to the strong opposition of the reserve community to the exercise of court-martial jurisdiction over reservists, the House deleted language from the Administration's proposed bill in Article 3(a) that would have permitted an involuntary recall to active duty of a reservist charged with offenses during a prior period of duty.

*Id.* at 161.

In 1950, when the UCMJ was signed into law, persons subject to the UCMJ were listed in Article 2, UCMJ, 10 U.S.C. § 802. Air Force reservists were subject to the Code under the following circumstances: (1) When "lawfully called into, or to duty in or for training in, the armed forces" (Article 2(1), UCMJ); (2) "while they are on inactive duty training authorized by written orders which are voluntarily accepted by them, which orders specify that they are subject to this code" (Article 2(3), UCMJ); and (3) when retired and "receiving hospitalization from an armed force" (Article 2(5), UCMJ). The legislative history explained the rationale for this treatment of retired reservists.

> Paragraph (5) represents a lessening of jurisdiction over retired personnel of a Reserve component. Under existing law, the Navy retains jurisdiction over retired Reserve personnel since such personnel are on the same retired list as members of a Regular component. The Army has no such jurisdiction since retirement benefits for non-Regular officers are administered by the Veterans' Administration. This paragraph relinquishes jurisdiction over its Reserve personnel except when they are receiving hospitalization from an armed force. This standardizes jurisdiction of the armed forces over Reserve personnel.

S.Rep. No. 81–486 (1950), *reprinted in* 1950 U.S.C.C.S. 2229.

Over the years, changes and additions to Article 2 moved the list of persons subject to the UCMJ to Article 2(a). Court interpretations limiting the reach of court-martial jurisdiction, and the perceived need to integrate the reserves more fully into the "total force," caused Congress to change the rules in 1986. National Defense Authorization Act for Fiscal Year 1987, Pub.L. No. 99–661, § 804, 100 Stat. 3906 (1986). *See Willenbring,* 48 M.J. at 164–70. Article 2(a)(3) was changed to eliminate the requirement that before reservists would be subject to the UCMJ while performing inactive duty training they had to voluntarily accept written orders subjecting them to jurisdiction. In addition, members of a "reserve component" could be ordered to active duty involuntarily for the purpose of subjecting them to court-martial jurisdiction. Article 2(d)(1). The offenses subjecting members of the reserve component to court-martial jurisdiction were limited to those that were committed while the accused was on active duty or inactive duty training. Article 2(d)(2). Article 2(a)(5) remained unchanged.

The petitioner argues that in 1950 Congress specifically intended to exempt members of the retired reserves from court-martial jurisdiction and the addition of Article 2(d) did not change that intent. If Congress had intended Article 2(d) to make retired reservists amenable to court-martial jurisdiction, leaving Article 2(a)(5) no longer makes sense.

The petitioner correctly recognizes that Article 2(d) does not confer jurisdiction; it just describes how and under what circumstances a reservist can be ordered to active duty for purposes of a court-martial. But, he misses the boat with regard to whether a retired reservist is subject to the UCMJ under Article 2(a). "The primary provision authorizing jurisdiction over reservists is Article 2(a)(1) which includes 'other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it.'" *Willenbring,* 48 M.J. at 159. So, the real issue here is whether the petitioner was lawfully called to active duty. The petitioner's reliance on the failure of Congress to change Article 2(a)(5) is not persuasive. A retired reservist who is receiving hospitalization from an armed force is directly subject to court-martial jurisdiction. Similar to retired members of a regular component who are receiving pay (Article 2(a)(4)) or "[p]ersons in custody of the armed forces serving a sentence imposed by a court-martial" (Article 2(a)(7)), the hospitalized reservist is subject to court-martial jurisdiction without being recalled to active duty.

We find that the petitioner is subject to court-martial jurisdiction based on the following reasoning:

(1) "[P]ersons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it" are subject to the UCMJ. Article 2(a)(1).

(2) A member of a "*reserve component*" who is not on active duty may be ordered to active duty involuntarily for the purpose of an Article 32 investigation, court-martial, or Article 15 proceedings, but only for offenses committed while the member was on active duty or on inactive-duty training. Article 2(d)(1) and (2).

(3) "A member of a reserve component who is subject to [the UCMJ] is not, by virtue of the termination of a period of active duty or inactive-duty training, relieved from amenability to the jurisdiction of [the UCMJ] for an offense against [the UCMJ] committed during such period of active duty or inactive-duty training." Article 3(d).

(4) The Air Force Reserve is a "reserve component of the armed forces." 10 U.S.C. § 10101(6). "It includes all Reserves of the Air Force who are not members of the Air National Guard of the United States." 10 U.S.C. § 10110.

(5) All reserves must be placed in one of three categories: Ready Reserve, Standby Reserve, or Retired Reserve. 10 U.S.C. § 10141(a). "Members in the Retired Reserve are in a retired status." 10 U.S.C. § 10141(b).

(6) At the time of his recall to active duty, the petitioner was a member of the Retired Reserve. As such, he was a member of a reserve component and subject to lawful orders to return to duty. The Secretary of the Air Force ordered the petitioner to active duty pursuant to Article 2(d)(1), 10 U.S.C. § 802(d)(1).

Thus, we hold that the petitioner is subject to court-martial jurisdiction for any offenses he committed while on active duty or inactive duty training, within the statute of limitations. The petition for extraordinary relief is denied. The case is returned for further proceedings not inconsistent with this opinion.

Judge SPISAK and Judge SCHLEGEL concur.