# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| **UNITED STATES,** | ) | **Misc. Dkt. No. 2013-28** |
| **Petitioner** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER** |
| **Lieutenant Colonel (O-5)** | ) | |
| **TODD E. MCDOWELL, USAF** | ) | |
| **Respondent** | ) | |
| | ) | |
| **Senior Airman (E-4)** | ) | |
| **CHRISTOPHER A. DEMARIO, USAF** | ) | |
| **Real Party in Interest** | ) | **Special Panel** |

WEBER, Judge:

The United States filed a Petition for Extraordinary Relief in this matter, seeking a writ of mandamus that orders the military judge to reverse two orders he issued in the matter of *United States v. Senior Airman Christopher A. DeMario*: (1) an order directing an oral deposition of BB, the alleged victim; (2) an order to reopen the Article 32, UCMJ, hearing and to accomplish new Article 34, UCMJ, advice.

### *Factual Background*

The Government preferred one charge and one specification alleging rape in violation of Article 120, UCMJ, against Senior Airman (SrA) DeMario, the real party in interest (hereinafter "the accused"). The alleged victim is BB, a 16-year-old girl at the time of the charged act. The charge and specification allege that the accused penetrated BB's vulva with his penis by using strength sufficient that she could not avoid or escape the sexual conduct.

BB reported that on 7 March 2012, she asked the accused (whom she considered a family friend) to drive her to a martial arts class they both attended. According to BB, she and the accused had experienced somewhat regular interaction at the martial arts dojo for several years, but they saw each other outside the martial arts center infrequently. On this afternoon, the accused agreed to drive BB and showed up at her house. He entered the home while BB was preparing to leave the house, according to BB. She reported that she retrieved her shoes from the garage and as she re-entered the home and proceeded through the laundry room, the accused pinned her against a door or wall with his body weight, pulled down her loose-fitting pants and underwear, pulled down his own pants,

and inserted his penis into her vagina for about 30 to 60 seconds. She reported that she did not physically resist the accused's actions because she "froze," having assumed the appellant would never do something like this. Several months later, after reporting the incident to her boyfriend, her martial arts instructor, and her mother, BB filed a report with law enforcement authorities.

The Government preferred the charge and specification on 14 August 2013, and an Article 32, UCMJ, hearing was scheduled for 4 September 2013. On 27 August 2013, trial defense counsel contacted BB's mother to arrange an interview with BB. That interview took place on 3 September 2013, the first mutually-available day and the day before the Article 32 investigatory hearing. After three hours of answering questions from trial defense counsel, BB and her mother ended the interview, noting the hour was late and BB had to meet with trial counsel and ready herself for the hearing the next day.

At the hearing, defense counsel noted they had not completed their interview of BB. The IO allowed BB to testify but allowed defense counsel additional latitude to question BB beyond what the IO would normally permit in such a hearing. BB completed her testimony on direct examination and cross-examination began before a lunch break took place. During the break, the IO noted BB appeared to be upset by the questioning on cross-examination, and the IO realized BB may not have understood that she had no legal obligation to appear at the hearing. The IO informed counsel for both the Government and the defense he intended to inform BB that she was not required to appear, in order to preclude any possible claim that she had been forced to testify against her will. Counsel for both sides agreed this was appropriate.

After the lunch break, the IO so advised BB and cross-examination resumed. Pursuant to the latitude the IO granted the defense, defense counsel asked BB a number of probing questions on issues not immediately related to the charged act itself. In interrogatories posed by the military judge, the IO later characterized defense counsel's questioning as follows:[1]

Q: Did you observe any questions from Defense Counsel during the cross examination which you believed were improper?

A: Upon reflection, no. Many of the questions asked by Defense Counsel seemed, at first glance, as irrelevant and intended to harass [BB]. However, once it was taken into account that Defense Counsel had not had an opportunity to complete their pre-trial interview of [BB], the wide-ranging nature of their questions made more sense. While in a normal Article 32 I would have asked Defense Counsel to move on based on lack of relevance,

---

[1] From the record available to us, it appears the military judge ordered the investigating officer to submit answers to interrogatories during motions practice.

in this case I allowed them to ask many questions that would normally have been covered during a pre-trial interview.

Q: Did you consider any alternative instructions to counsel regarding how questions were being asked of the witness before advising the witness she was free to leave?

A: I could not think of any alternative instructions that would address the issue. The problem was that Defense Counsel was asking questions on a wide range of matters that were irrelevant to the incident being investigated. However, since an Article 32 is a tool for discovery for the defense, and Defense Counsel had not completed the interview they normally would have, I wanted to allow them the leeway to ask questions they felt were necessary. At various points I raised the relevancy of their questions, but Defense Counsel insisted that they were necessary, and refused to move on to questions that pertained to the alleged attack.

. . .

Q: Did you *sua sponte* raise any objections to or instruct counsel for either side concerning the method of or counsel's demeanor during questioning of [BB]?

A: Yes. As discussed above, the questions by Defense Counsel would normally have been irrelevant to the investigation, and I raised that concern with Defense Counsel. Quite honestly, the act of attempting to take substantial notes during testimony made it difficult to remember the situation Defense Counsel was in. When questions were asked that initially struck me as wildly off topic, I asked Defense Counsel of their relevance. Once reminded of the lack of a pre-trial interview with [BB], I allowed them to continue their questioning. I believe this occurred twice.

Q: How would you characterize the general decorum of the proceeding during Defense Counsel's questioning of [BB] in comparison to the remainder of the hearing?

A: Similar. However, there were more objections from the other side than during the other questioning.

Cross-examination took place for a total of more than two hours. At that point, defense counsel asked BB a number of questions about the shoes the appellant wore. The IO characterized the questions as follows: "I could not understand why Defense Counsel was not satisfied with her answer to the first question, that she didn't remember what type

of shoes he wore, and that it almost seemed as if Defense Counsel was needling her for a reaction." At that point, BB asked if the type of shoes the accused was wearing was relevant, and asked permission to leave. The IO advised her that she was free to leave, and BB departed. It appears from the summary of BB's testimony that BB departed the hearing before defense counsel began questioning her about the charged act itself; the questioning before BB's departure apparently centered on her previous interaction with the accused and the events on 7 March 2012 that led up to the charged act. As the IO prepared his report, defense counsel objected to holding the Article 32 hearing and considering BB's testimony. The IO considered the objections and prepared a recommendation that included BB's testimony.

In pre-trial motions practice, trial defense counsel moved the military judge to order a deposition of BB. The defense reasoned that BB's testimony was central to the Government's case, and the defense had not had a full opportunity to interview or cross-examine her before or during the Article 32 investigatory hearing. The defense noted that it had previously requested that the convening authority order a deposition, and this request was denied. Defense counsel also moved the military judge to dismiss the charge and specification, or alternatively to direct a new Article 32 investigation. The defense alleged that the investigation was not sufficiently thorough and the accused was denied a substantial pre-trial right to have a full opportunity to cross-examine BB. The Government opposed both defense motions.

The military judge granted both defense motions, at least in part. Although he noted that BB had indicated she would be available for trial, he ordered that BB be deposed because she "provided incomplete testimony" at the Article 32 hearing that "denied the accused of a substantial pretrial statutory right: a full opportunity to cross-examine an available witness at the Article 32 hearing." He concluded that "[d]ue to the exceptional circumstances of this case, it is in the interest of justice that the testimony of [BB] be taken and preserved." The military judge also ordered the convening authority to re-open the Article 32 hearing so the IO could consider BB's deposition, and that new pretrial advice under Article 34, UCMJ, be accomplished thereafter.

*Procedural History*

The Government filed the instant petition on 27 November 2013, 16 days after the latter of the military judge's rulings. The military judge then granted the Government's request to stay the enforcement of the orders until this Court could act on the petition.

On 19 December 2013, BB moved through counsel to file an amicus brief with this Court in support of the Government's petition for extraordinary relief. This Court granted the motion and accepted the amicus brief for its consideration. BB moved for leave to file an additional amicus brief on 3 January 2014. The accused, through counsel, opposed this motion. This Court did not act on the motion for leave to file the additional

amicus brief at the time. However, we now grant the motion for leave to file the additional amicus brief and we have considered this brief.

The accused responded to the petition on 9 January 2014. The Government then moved for leave to reply to the accused's response. This Court did not act on the Government's motion for leave to file its reply at the time. However, we now grant the Government's motion for leave to file its reply and we have considered this reply.

*Law*

The All Writs Act, 28 U.S.C. § 1651(a), authorizes "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This Court is among the courts authorized under the All Writs Act to issue "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a); *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013).

The Supreme Court has held that three conditions must be met before a court may provide extraordinary relief in the form of a writ of mandamus: (1) the party seeking the writ must have "no other adequate means to attain the relief"; (2) the party seeking the relief must show that the "right to issuance of the relief is clear and indisputable"; and (3) "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. United States Dist. Court*, 542 U.S. 367, 380-81 (2004) (internal quotation marks omitted).

A writ of mandamus is "a drastic remedy to be used sparingly." *Morgan v. Mahoney*, 50 M.J. 633, 634 (A.F. Ct. Crim. App. 1999) (citing *Will v. United States*, 389 U.S. 90, 95 (1967)). "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (citations omitted). "To justify reversal of a discretionary decision by mandamus, we must be satisfied that the decision amounted 'to a judicial usurpation of power or be characteristic of an erroneous practice which is likely to recur.'" *Morgan*, 50 M.J. at 634 (quoting *Murray v. Haldeman*, 16 M.J. 74, 76 (C.M.A. 1983)); *see also United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983). A decision by a trial judge may be erroneous but not rise to the level of a usurpation of judicial power, so long as the trial judge's ruling is "made in the course of the exercise of the court's jurisdiction to decide issues properly brought before it." *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382 (1953). "Congress must have realized that in the course of judicial decision some interlocutory orders might be erroneous," and therefore limited application of the All Writs Act for writs of mandamus to "the exceptional case where there is clear abuse of discretion or

'usurpation of judicial power.'" *Id.* at 383.

In the context of an accused petitioning the appellate court for a writ of mandamus, it is appropriate to consider the merits of the petition in three instances: (1) where the petitioner develops substantial arguments denying the right of the military to try him; (2) where prompt review will conserve time, energy, cost and the ordeal of a trial; and (3) where the issues to be resolved are recurrent and will inevitably be faced by appellate courts in many future cases. *Morgan*, 50 M.J. at 634 (citing *Murray,* 16 M.J. at 76-77).

"A formal pretrial investigation is a predicate to the referral of charges to a general court-martial unless the accused waives the pretrial proceeding." *United States v. Davis*, 64 M.J. 445, 446 (C.A.A.F. 2007). "The procedures for an Article 32 hearing include representation of the accused by counsel, the right to present evidence, and the right to call and cross-examine witnesses." *Id.* at 446-47. The Article 32 investigation "operates as a discovery proceeding for the accused and stands as a bulwark against baseless charges." *United States v. Samuels*, 27 C.M.R. 280, 286 (C.M.A. 1959). However, the accused has no absolute right to examine or cross-examine all relevant witnesses at this proceeding. *United States v. Burfitt*, 43 M.J. 815, 818 (A.F. Ct. Crim. App. 1996). If a witness is not reasonably available the investigating officer may consider alternatives to that witness's testimony. Rule for Courts-Martial (R.C.M.) 405(g). A civilian witness who refuses to testify is not reasonably available, because civilian witnesses may not be compelled to attend a pretrial investigation. R.C.M. 405(g)(2)(B), Discussion.

"A deposition may be ordered whenever, after preferral of charges, due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness be taken and preserved for use at an investigation under Article 32 or a court-martial." R.C.M. 702(a). A deposition may be taken to preserve the testimony of a witness who is likely to be unavailable at the Article 32 investigation or at trial. R.C.M. 702(a), Discussion. After referral, either the convening authority or the military judge may order that a deposition be taken on request of a party. R.C.M. 702(b). A request for a deposition may be denied only for good cause. R.C.M. 703(c)(3)(A). Good cause for denial includes failure to state a proper ground for taking a deposition, failure to show the probable relevance of the witness's testimony, or that the witness's testimony would be unnecessary. R.C.M. 703(c)(3)(A), Discussion. "The fact that the witness is or will be available for trial is good cause for denial in the absence of unusual circumstances, such as improper denial of a witness request at an Article 32 hearing, unavailability of an essential witness at an Article 32 hearing, or when the Government has improperly impeded defense access to a witness." *Id.*

Misc. Dkt. No. 2013-28

*Discussion*

We conclude it is appropriate to consider the petition under the All Writs Act. Having done so, we find the petitioner is not entitled to the relief requested.

The military judge was properly presented with two defense motions arising from the events that transpired before and during the Article 32 investigation. He considered the parties' motions and arguments and issued a ruling. The military judge has explicit authority to order a deposition and re-opening of an Article 32 investigation. His decision was "made in the course of the exercise of the court's jurisdiction to decide issues properly brought before it." In short, the military judge decided an issue the parties properly placed before him, and he elected a lawful option in response to the motions. There is therefore no "judicial usurpation of power" in either of the military judge's rulings.

We also find the military judge's rulings were not "characteristic of an erroneous practice which is likely to recur." The military judge had some authority for his ruling, as the Discussion to R.C.M. 702(c)(2)(A) indicates that ordering a deposition may be proper if an essential witness is unavailable at an Article 32 hearing. A reasonable argument could be made that an essential witness – BB – was made unavailable at the Article 32 hearing when she excused herself before cross-examination concluded. In addition, while BB was not required to appear at the Article 32 hearing at all, our superior court has held that the absence of a key civilian witness can "deprive the accused of a substantial pretrial right," and that the mere refusal of a civilian to testify at an Article 32 hearing "does not *eo ipso* nullify the defense right to cross-examine." *United States v. Chuculate*, 5 M.J. 143, 144-46 (C.M.A. 1978). The Court held that where the defense did not timely move to depose the absent civilian witness, and the absence of the civilian witness at the Article 32 hearing did not adversely affect the trial, there is no reason to set aside the conviction. *Id.* at 145-46. Here, the defense timely moved for a deposition of a key civilian witness. Assuming without deciding that her departure after more than two hours of cross-examination constituted her "unavailability" that "deprived the accused of a substantial pretrial right," *Chuculate* indicates that ordering her deposition was an authorized course of action.

We acknowledge that our collective experience and judgment causes us to view the military judge's ruling with caution. The accused had the benefit of more than five hours with BB: three hours during the defense interview and more than two hours of cross-examination during the Article 32 hearing. If it could not cover this relatively straight-forward accusation during that time, then perhaps defense counsel should not be entitled to another unlimited block of time in which to question BB during a deposition. Military judges and investigating officers should ensure their rulings and actions do not generate an incentive for defense counsel to create a situation that renders a witness unavailable at an Article 32 hearing. Also, BB was available to testify at trial. Assuming

without deciding that the defense was entitled to interview her again before trial, there is no proof she would not have submitted to another defense interview as trial approached (though she apparently did not respond to defense attempts to contact her after referral). The military judge's ruling also indicates discomfort with the fact that the IO only notified BB of her right to leave after the Government completed its direct examination. However, the record indicates the IO took this course of action because BB's discomfort did not become apparent until after cross-examination began, and counsel for both sides agreed with the IO's proposal to so advise her.

Despite these issues with the military judge's ruling, this matter represents a case-specific situation, not a widespread situation likely to recur. We know of no other instance in which a military judge has ordered a deposition under similar facts such as the instant case, and the parties and amicus briefs have pointed us to none. In most cases of this type, defense counsel are able to adequately prepare for trial without the need for a court-ordered deposition. In addition, we note that the Article 32 process will soon be more limited in scope, with explicit statutory language that the victim may not be required to testify at the preliminary hearing.[2] Defense counsel may or may not have greater occasion to request depositions of alleged victims after this legislation takes effect, but such requests will be based on different factual predicates than the situation in this case. A writ of mandamus is a drastic remedy to be used sparingly. The Government's petition does not provide the type of wide-spread situation that warrants employment of this extraordinary relief.

Accordingly, it is by the Court on this 13th day of March, 2014,

**ORDERED:**

That the Petition for Extraordinary Relief is **DENIED**.

Chief Judge ROAN and Senior Judge HELGET concur.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[2] Pub. L. 113-66, FY 2014 National Defense Authorization Act, § 1702.

Misc. Dkt. No. 2013-28